IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KARLISA JONES, | ) | |
| | ) | CASE NO. 3:14-CV-1236 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 15). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Klarisa Jones ("Plaintiff" or "Jones") application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

**I. PROCEDURAL HISTORY**

The Social Security Administration ("SSA") previously adjudicated Plaintiff as disabled when she was under the age of 16. (Tr. 66). The SSA applied the children's standard for disability and concluded that Plaintiff met the criteria for mental retardation under Listing 112.05D. (Tr. 69). The Administration relied in part on Plaintiff's IQ scores from the Wechsler Intelligence Scale for Children-Revised ("WISC-R") on which she obtained a verbal score of 67, a performance score of 75, and a full scale score of 70. (*Id.*).

In 2005, after Plaintiff had attained the age of 18, the SSA re-determined whether Plaintiff remained eligible for benefits. (Tr. 66-74). Generally, the Social Security Act requires redetermination of SSI benefits when an individual reaches adulthood and requires a claimant to submit medical or other evidence to show she is disabled under adult standards. *See Lewis v. Comm'r of Soc. Sec.*, No. 1:09-CV-2450, 2011 WL 334850, at *6 (N.D. Ohio, Jan. 31, 2011). A hearing was held on March 11, 2005, during which Plaintiff appeared and testified. (Tr. 66). Plaintiff was unrepresented, and Administrative Law Judge ("ALJ") Frederick McGrath ascertained, on the record, that Plaintiff was aware of her right to representation at the hearing, and that she knowingly waived the right and elected to proceed pro se. (*Id.*).

On December 2, 2005, ALJ McGrath issued an unfavorable decision, concluding that Plaintiff was no longer disabled as of November 1, 2002. (Tr. 66-74). In the process of the evaluation, the ALJ determined that Plaintiff did not satisfy Listing 12.05C, which is the corresponding adult listing for mental retardation. (*Id.*). Plaintiff did not appeal the ALJ's December 2005 decision, making it the final decision of the Commissioner.

Around September 16, 2010, Plaintiff filed the application for SSI benefits currently at issue before the Court. (Tr. 214). The Social Security Administration denied her claim initially and upon reconsideration. (Tr. 119, 129). At Plaintiff's request, an administrative hearing was held before ALJ Ruth Tyszka on November 29, 2012. (Tr. 31). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Joseph Thompson, also appeared and testified. (*Id.*).

On December 20, 2012, ALJ Tyszka issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 14-25). The ALJ acknowledged the December 2005 disability determination, but found that no significant new evidence or changed circumstances provided a

2

basis for changing the determination of disability.  Accordingly, the ALJ applied the five-step sequential analysis[1] and concluded that Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id.*).

The Appeals Council denied Plaintiff's request for review, making the ALJ's December 20, 2012, determination the final decision of the Commissioner. (Tr. 1-4).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on March 29, 1976, and was 34-years-old at the time of the ALJ's decision, making her a "younger person" for disability purposes. 20 C.F.R. § 416.963(c). Plaintiff completed the ninth or tenth grade. (Tr. 40, 235).  She has no past relevant work.

### B.  Medical Evidence

On May 31, 1989, Plaintiff underwent the WISC-R intelligence test. (Tr. 322).  At the time, she was 13-years-old and in the seventh grade.  She obtained a verbal IQ score of 75 and performance and full scale IQ scores of 72. (*Id.*).

In April 1992, while Plaintiff was in high school, she was evaluated by psychologist Jerome Zake, Ph.D. (Tr. 304-18).  She was 16-years-old.  As part of the evaluation, Plaintiff took the Wechsler Adult Intelligence Scale-Revised ("WAIS-R"). (Tr. 308).  She obtained a verbal IQ score of 76, a performance IQ score of 72, and a full scale IQ score of 73. (*Id.*).

Around October or November 1992, Plaintiff participated in a consultative psychological examination with John Shepard, Ed.D. (Tr. 351-54).  During this evaluation, Plaintiff took the WISC-R and received a verbal IQ score of 67, a performance IQ score of 75, and a full scale IQ score of 70. (Tr. 352).  Shepard diagnosed attention deficit disorder, a conduct disorder, and mild mental retardation. (Tr. 353).  He opined that Plaintiff's intellectual abilities fell within the borderline range. (*Id.*).

In March 2003, when Plaintiff was 26-years-old, she underwent the WAIS-III, the results of which were reviewed and evaluated by consultative psychologist Christopher Layne, Ph.D. (Tr. 345-50).  She received a full scale IQ score of 67, a performance IQ score of 70, and a verbal IQ score of 70. (Tr. 348).  The scores represented mild mental retardation. (*Id.*).  Dr.

4

Layne, however, opined that Plaintiff's cognitive scores underestimated her intelligence for a number of reasons. (Tr. 349).  More specifically, Dr. Layne explained that Plaintiff's history suggested only borderline retardation and her behavior during the consultative examination suggested little retardation. Dr. Layne further stated that Plaintiff was unmotivated during testing and her performance on intellectual testing ten years prior had resulted in a full scale IQ score of 70.  The psychologist concluded that Plaintiff's intellect fell into the category of borderline retardation, rather than mild mental retardation. (*Id.*).

In his report, Dr. Layne also noted that Plaintiff attended regular classes in school until the seventh grade, at which time she was acting out in a number of ways. (Tr. 349).  Plaintiff was diagnosed with conduct disorder and went on to be arrested over 20 times. (*Id.*).  Dr. Layne concluded that Plaintiff would have no limitations in work-related mental abilities, including relating to coworkers; understanding and following instructions; attending to simple, repetitive tasks; withstanding work stress; and managing money. (*Id.*).

On August 29, 2011, Sonja Pinsky, M.D., conducted a second consultative psychological examination of Plaintiff. (Tr. 384-88).  Dr. Pinsky found that Plaintiff had clear speech and was well oriented to time, place, and person. (Tr. 386).  Plaintiff was unable to perform addition or subtraction in increments of seven.  She was able to repeat a sequence of four numbers correctly in the forward order, but not in reverse.  Plaintiff also had difficulty interpreting proverbs and could not remember the three words given to her at the beginning of the interview. (*Id.*).

Dr. Pinsky reviewed the results of Plaintiff's IQ tests from May 1989, October 1992, and March 2003. (Tr. 385).  The doctor diagnosed mild mental retardation based on Plaintiff's history. (Tr. 387).   Dr. Pinsky concluded that Plaintiff would be moderately impaired in her ability to understand, remember, and carry out instructions; maintain attention, concentration,

5

persistence, and pace to perform simple and multi-step tasks; and in responding appropriately to supervision and coworkers. (Tr. 388).

On September 1, 2011, state agency reviewing physician Paul Tangeman, Ph.D., assessed the record. (Tr. 104-05). Dr. Tangeman concluded that Plaintiff did not meet the requirements of Listing 12.05C. (*Id.*).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since September 16, 2010.

2. The claimant has the following severe impairments: asthma, dysthymia, and borderline intellectual functioning.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of work at all exertional levels but with the following nonexertional limitations: the need to avoid constant exposure to extreme heat, cold, wetness, and, or humidity. The individual is limited to no more than occasional exposure to fumes, odors, dust, gases, and other irritants such as those. The individual is limited to simple, routine, and repetitive tasks with one to two step instructions; the individual is limited to unskilled work and is further limited to work that involves no written instructions. In addition, the individual is capable of being around other employees throughout the workday, with only occasional interaction (less than one-third of the workday) and no more than occasional and superficial interaction with the public.

5. The claimant has no past relevant work.

6. The claimant was born on March 29, 1976, and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can performed.

11. The claimant has not been under a disability, as defined in the Social Security Act, since September 16, 2010, the date the application was filed.

(Tr. 17-24) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

7

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### VI. ANALYSIS

Plaintiff maintains that the ALJ incorrectly applied res judicata to find that she was bound by the Social Security Administration's 2005 unfavorable disability determination. Plaintiff more specifically takes issue with the ALJ's conclusion that she did not meet or medically equal Listing 12.05C.

In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit confronted the question of whether the principles of res judicata applied against the Commissioner of Social Security on claims which have been previously determined. *Id.* at 842. The court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* Following the *Drummond* decision, the Social Security Administration ("SSA") issued Acquiescence Ruling 98-4(6), which explained how the SSA would apply *Drummond* within the Sixth Circuit, providing the following:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the

8

> prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998). Additionally, the Commissioner's internal guide sets out issues and factual findings precluded by res judicata under *Drummond*. *Erb v. Comm'r of Soc. Sec.*, No. 13-CV-14798, 2015 WL 730130, at *20 (E.D. Mich. Feb. 19, 2015) (*citing Hearings, Appeals, and Litigation Law Manual* ("HALLEX"), § I-5-4-62, 1999 WL 33615029, at *8-9 (Dec. 30, 1999)). These include the RFC as well as other findings along the sequential evaluation process, such as whether a claimant meets or equals a listing. *Id.* The plaintiff carries the burden to show circumstances have changed since the prior ALJ's decision "by presenting new and material evidence of deterioration." *Drogowski v. Comm'r of Soc. Sec.*, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011) *report and recommendation adopted*, 2011 WL 4502955 (E.D. Mich. Sept. 28, 2011).

      Plaintiff now contends that the ALJ improperly adopted the December 2005 Disability Determination because there was new and material evidence providing a basis for a different finding. Plaintiff does not argue that the RFC should have been more restrictive; however, she asserts that the evidentiary record shows she met or medically equaled Listing 12.05C, the listing for mental retardation. To overcome res judicata, Plaintiff points to two different portions of the record which she alleges constitute new and material evidence and provide a basis for a different finding. First, she refers to records from Toledo Public Schools through 1992, which she explains included Dr. Zake's intelligence test and psychological evaluation. Plaintiff also points to Dr. Pinsky's consultative examination report from 2011. Additionally, Plaintiff argues that given her cognitive difficulties, it is significant that she had counsel before the current ALJ, but was not represented at the 2005 hearing.

9

At the outset of her opinion, the ALJ acknowledged the res judicata principle and found that she was bound by the 2005 decision because there was no significant new evidence or changed circumstances that would warrant a departure. (Tr. 14).  After a review of the record and the ALJ's decision, the Court finds that the ALJ sufficiently accounted for any new evidence.  The ALJ reasonably concluded that additional evidence did not demonstrate a change in the severity of Plaintiff's mental impairment such that she fulfilled the requirements of Listing 12.05C.

At step three of disability determination, the ALJ recounted the requirements of the listing at issue. (Tr. 19-20).  In relevant part, Listing 12.05C requires a valid verbal, performance, or full scale IQ of 60 through 70. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  The ALJ then discussed what appears to be the only IQ test results not before the prior ALJ.  These were the WAIS-R scores from Dr. Zake's 1992 evaluation through Toledo Public Schools. (Tr. 20, 308).  As the ALJ correctly assessed, the results from Dr. Zake's IQ test did not fall into the range required by the Listing. (Tr. 20, 308).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Thus, the scores did not warrant a new listing conclusion, but supported the ALJ's finding that Plaintiff did not satisfy the requirements of 12.05C.

Plaintiff argues that the ALJ should have found these IQ results fell within the qualifying range of Listing 12.05C, because the results allegedly represented a range of scores.  Plaintiff notes that Dr. Zake's test form explained that she achieved a performance IQ score of 72, plus or minus a 9 point margin of error, and a full scale IQ score of 73, plus or minus a margin of error

10

of 5 points. (Tr. 308). Taking into account these margins of error, Plaintiff maintains that her scores fell below 71.

Listing 12.05C does not contain language requiring or allowing ALJs to lower IQ test scores by any margin of error. Additionally, the regulations "do not indicate that standard errors of measurement should be taken into consideration in determining whether an individual satisfies a limitation criteria. Incorporating a margin of error into a claimant's IQ test results would effectively expand the requisite I.Q. under [L]isting 12.05C . . . [and] would alter the range of I.Q.s which satisfy [Listing 12.05C] in contradiction of federal regulations." *Harris v. Comm'r of Soc. Sec.*, No. 3:08-CV-472, 2010 WL 749654, at *10 (S.D. Ohio Mar. 1, 2010) (*quoting Dover v. Apfel*, 2000 WL 135170 at *2 (10th Cir. 2000)). Accordingly, Plaintiff cannot attempt to use a standard deviation argument to lower her IQ scores into the Listing's range.

Plaintiff also cites to the Social Security Administration's Program Operations Manual System ("POMS") Section DI 24515.055C[2] in support of this standard deviation approach. This section, however, does not bolster Plaintiff's argument. The section provides guidance as to the consideration of standard deviations when evaluating a claimant whose IQ has been tested multiple times and how those tests should be compared. It does not require the ALJ to consider standard deviation for a single set of test scores.

As part of her argument that res judicata is inappropriate, Plaintiff also points to Dr. Pinsky's consultative examination report, which was not part of the 2005 disability

---

[2] The POMS is the operational reference used by SSA staff to conduct SSA's daily business. *Velez v. Comm'r of Soc. Sec.*, No. 1:09-CV-715, 2010 WL 1487599, at *6 (N.D. Ohio Mar. 26, 2010) *report and recommendation adopted*, No. 1:09-CV-715, 2010 WL 1487729 (N.D. Ohio Apr. 13, 2010). "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect." *Id.* (*quoting Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385 (2003)). The section of the POMS cited by Plaintiff is available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515055.

determination record.  Notably, Dr. Pinksy did not perform any additional IQ testing.  Instead, the doctor reviewed Plaintiff's prior IQ test results and medical history to diagnose Plaintiff with mild mental retardation. (Tr. 385, 387).  Nevertheless, the physician's diagnosis is not sufficient to establish the requirement that Plaintiff had a valid IQ score below 71.  *See Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001)* (explaining that the diagnostic description of mental retardation and the IQ score requirement are separate requisites under Listing 12.05 and a claimant must satisfy both to obtain benefits).  Additionally, as the ALJ stated, Dr. Pinsky's diagnosis did not comport with Plaintiff's IQ scores from Dr. Zake's evaluation. (Tr. 22).  Accordingly, the ALJ did not err in applying res judicata despite this new evidence.

Aside from Dr. Zake's IQ test results and Dr. Pinsky's opinion, Plaintiff maintains that additional new evidence from Toledo Public Schools undermines the application of res judicata.  She cites to pages 304 through 344 of the administrative transcript, which contain these records.  Plaintiff also argues that she was more fully represented before the current ALJ as she had counsel during the administrative hearing.  With regard to both of these arguments, Plaintiff fails to highlight specific evidence or testimony and explain how it would reflect a change in her mental health such that the ALJ erred in finding that she did not satisfy the Listing.  Accordingly, these arguments are not well taken.

Plaintiff also ignores new evidence from state agency reviewing physician Dr. Tangeman, whose opinion the ALJ accorded great weight. (Tr. 23).  Dr. Tangeman reviewed the entire updated record and concluded that Plaintiff did not meet or medically equal Listing 12.05C. (Tr. 23, 105).  The opinion serves as further support for the ALJ's determination.

Plaintiff contends that the ALJ erred in failing to expressly discuss all of the evidence related to Listing 12.05C in the portion of the ALJ's opinion that covered step three.

Nevertheless, there is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio 2012) (*quoting Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). Courts may look to the ALJ's decision in its entirety to justify the ALJ's step three analysis. *Id.* Here, the ALJ's later discussion of the evidence at step four was thorough and sufficient to communicate whether Plaintiff met or equaled the requirements of the Listing, particularly the IQ prong. The ALJ discussed all of Plaintiff's IQ test results at step four, as well as other medical opinion evidence that related to Listing 12.05C, in a manner that sufficiently satisfied her obligation.

Accordingly, Plaintiff has failed to demonstrate that the ALJ's application of *Drummond* and AR 98-4(6) was improper. The ALJ fully considered the evidence, including new evidence in the record, and concluded that Plaintiff's intellectual impairment had not worsened such that it warranted a deviation from the 2005 Listing determination. As a result, the Court will not consider the remainder of Plaintiff's arguments where she asserts that she met or medically equaled each prong of the Listing.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: July 16, 2015.